[No. 1896.]

ADRIANO DE OLLES *v.* THE STATE.

1. PRACTICE — INDICTMENT. — If an indictment recites upon its face that it was presented in the district court of the proper county and State, by the grand jurors of said county, duly elected, impaneled, sworn and charged as such, the presumption obtains that it was presented by a legal grand jury of the proper county, and to prevail against such presumption, it devolves upon the defense, in its motion to set aside the indictment, to satisfactorily show that, in fact, the indictment was not the act of a legal grand jury of the county; and to do this, it is not sufficient to show merely that there is no entry upon the minutes of the court formally reciting the organization of the grand jury.

2. SAME — GRAND JURY. — INDICTMENT is not vitiated by the omission to enter upon the minutes of the court the organization of the grand jury which presented it, although correct practice requires the entry of such proceeding.

3. SAME — AMENDMENT. — Before the trial was entered upon in this case, the trial court, upon the motion of the district attorney, caused to be entered upon the minutes *nunc pro tunc*, the proper entry showing the organization of the grand jury which presented the indictment, and that the said grand jury was the legal and duly qualified grand jury of the proper county. *Held*, correct.

4. SAME. — It was not error to permit the clerk of the district court to amend his signature to the file mark on the indictment by appending thereto the initials designating his official character. Such a clerical omission can be supplied at any time under the direction of the trial court, and, besides, the filing, even without the amendment, was sufficient.

5. SAME. — INDICTMENT for murder sufficiently alleged the name of the deceased as "one Chino, whose other name is to the grand jurors unknown."

6. NEW TRIAL. — NEWLY DISCOVERED EVIDENCE does not entitle an accused to a new trial when the proceedings disclose a total failure to exercise diligence to obtain it upon the trial. Note in this case a failure of diligence, wherefore the trial court, in view of the evidence adduced, did not err in refusing a new trial upon the ground of newly discovered evidence.

7. MURDER — FACT CASE. — See the statement of the case for evidence *held* sufficient to support a capital conviction for murder.

APPEAL from the District Court of La Salle. Tried below before the Hon. D. P. Marr.

The indictment in this case charged the appellant with the murder of one "Chino" (whose other name was to the grand jurors unknown), in La Salle county, Texas, on the 15th day of September, 1878. His trial resulted in his conviction of murder of the first degree, his punishment being affixed at death.

The substance of the testimony of Desidario Trevinio, the first witness for the State, was that he was present in September, 1878, when the defendant shot and killed "Chino" on the public road in La Salle county, Texas. The "Wahuka" ranche and Fort Ewell, the two points between which the fatal shot was fired, were about one mile apart. The witness and the deceased, just before the shot was fired, were riding horseback about twenty paces in the rear of the defendant and three or four other parties, all traveling towards Fort Ewell. The defendant, having dropped behind his companions until he secured a position about midway between them and the witness and deceased, reined in his horse, until deceased and witness rode up nearly opposite him, the deceased next to him, when, without a word being spoken by either the defendant or the deceased, the defendant deliberately leveled his carbine and shot the deceased through the head. He then left, going towards the Rio Grande, and was not seen again by the witness until some time afterwards in Laredo, Mexico. The witness and other parties removed the deceased to Fort Ewell, where he died from the effects of his wound, about two hours after he was shot. The shooting occurred about sundown.

Cross-examined, the witness testified that the name of the deceased "Chino" was Tebucio Aguilar. The witness was not before the grand jury which, in 1881, found the indictment, but at that time was at Los Almos. Deceased introduced the defendant to the witness as his friend, two or three days before the shooting, since which time no quarrel or harsh words had passed between the defendant and the deceased in the hearing of the witness, and witness had been traveling with them during that time. The other members of the traveling party, three or four in number, were riding along the road towards Fort Ewell, between twenty and thirty steps in advance of witness, deceased and defendant, when the fatal shot was fired. People who knew the deceased called him "Chino," and he recognized that name. Defendant was introduced to the witness by the deceased as Adriano De Olles.

Mrs. Ramona Martinez Sotello testified, for the State, .that "Chino" was brought to the house in Fort Ewell in which she lived about dark, on the evening that he was shot. He knew that he was not going to recover, begged to be shot again as a relief to his suffering, and said that the defendant, Adriano De Olles, shot him about a difference of four bits. Deceased was known, and passed under the name of "Chino." Desidario proposed to write to his friends, and, a short while before his death, witness asked Chino his right name for the purpose of enabling Desidario to inform his friends of his condition, and learned from him for the first time that his name was Tebucio Aguilar. Chino died about two hours after he was brought to the house. Doctor Hargus, among others, was present when he died.

Cross-examined, the witness testified that her maiden name was Ramona Martinez. The proprietor of the house in which Chino died was in Fort Ewell when Chino was brought to the house. His wife was at home. Witness did not know who, besides herself, was present when Chino said that defendant had killed him about a difference of four bits.

Desidario Trevinio, recalled by the State, testified that the one shot only which killed the deceased was fired. The deceased had a pistol secured to his person and a carbine in a scabbard secured to his saddle, but made no effort to draw or use either. Witness made no effort to prevent defendant from firing the fatal shot, simply because he had no opportunity. It was fired suddenly, without warning, and without a word being said by either of the parties, and witness had no idea of defendant's purpose prior to the firing of the shot. Immediately upon firing, the defendant ran off towards the Rio Grande. Witness had a pistol but made no use of it. Defendant was within four feet of deceased when he fired.

G. W. Hill, J. B. Haynes and T. J. Buckley testified, for the State, that they were members of the grand jury which presented the indictment against the defendant. The grand jury secured the attendance of every witness accessible, and made every possible effort to ascertain the name of the deceased. They could learn no other name than Chino. The State closed.

Romalo Perez testified, for the defense, that he was one of the party traveling from the Wahuka ranche to Fort Ewell when the deceased was shot. Witness and other parties rode in advance of defendant, and deceased and Desidario rode together behind the defendant. Just as the party reached the point of the tragedy, the witness heard three or four shots in his rear. On looking

around, which he did immediately, he saw the defendant going west, and saw Desidario near the deceased, which position, with reference to the deceased, he occupied at the time of the shooting. The witness's son, who was one of the parties with him, was thrown from his horse, and witness went in pursuit of the horse, which escaped. As he started after the horse he saw the deceased lying on the ground, Desidario standing over him. Deceased, as he lay on the ground, held a pistol in his hand. The witness, his son and two others were about fifteen paces ahead of defendant when the shooting occurred. Desidario and deceased were about the same distance in the rear of defendant. Defendant had a large gun in his hands. Four shots in all were fired, two in rapid succession. The witness did not return to the party after he left in pursuit of his son's horse.

Cross-examined, the witness testified that the deceased, whom he had never before seen in that neighborhood, was known as "Chino" and was called "Chino." Witness did not know where defendant went to after the shooting. Defendant was between the witness and his party and the deceased and Desidario when the shooting occurred. Witness left in pursuit of his son's horse immediately after the shooting, and before the deceased was removed to Fort Ewell. Defendant did not leave the party after the shooting, but went on with them, leaving only Desidario with the deceased.

Doctor Hargus testified, for the defense, that he attended a man named Tebucio, at his death in the fall of 1878. That man died from the effects of a gunshot wound. The ball entered from the front. There was no powder-burn about the wound. The wound was necessarily fatal. Deceased said something about dying just after the witness reached him, and expired almost immediately. Witness learned the name of deceased to be Tebucio on that night. Witness was living in Tilden, McMullen county, Texas, in 1881, when this indictment was found.

Four witnesses, having known the defendant from twelve to twenty years, testified that his reputation as a quiet, peaceable man was good.

The appellant asked for a new trial to adduce newly-discovered testimony as follows: Of Luis Martines, who, the application alleged, would testify that prior to the killing of the deceased the deceased threatened the life of the defendant, and just prior to the firing of the fatal shot he, deceased, drew his pistol and fired at the defendant before the defendant drew, or could have drawn, his weapon, and that in firing the fatal shot the defendant fired purely

in self-defense.   Of E. A. Irving, who would testify that he was en-
gaged in driving the stage between Laredo and Wahuka at the time
of the homicide, and that, when near the latter point at the time of
the killing, and within hearing of everything which transpired, he
heard a large number of shots fired, and that it could not be true,
as testified by the State's witness Trevinio, that but one and the
fatal shot was fired at the time of the homicide.   Of Adriano
Rangel, who would testify that he was present at the time of the
killing, and that if the defendant did, in fact, shoot the deceased,
he shot him purely in self-defense, and to repel an unlawful attack
first made upon him by the deceased.   Of S. Garcia, who would
testify that deceased died at witness's house; that witness was im-
mediately present from the time that deceased was brought to the
house until he died, and that deceased made no dying declaration
whatever.

*Williams, Swann & Hall,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

Willson, Judge.   The indictment shows upon its face that it was
presented in the district court of La Salle county, State of Texas,
by the grand jurors of said county, duly elected, tried, impaneled,
sworn and charged as such.   From this recital in the indictment we
must presume that the presentment was made by a legal grand jury
of the proper county.   This presumption must obtain until it is
shown that in fact the indictment was not presented by a legal
grand jury.

It devolved upon the defendant, in support of his motion to set
aside the indictment, to satisfactorily show that in fact the indict-
ment was not the act of a legal grand jury of La Salle county.   It
was not sufficient merely to show that there was no entry upon the
minutes of the court reciting in form the organization of the grand
jury.   An omission to enter such proceeding upon the minutes would
not vitiate the indictment.   In this case the indictment is in all
respects sufficient, and its presentment in open court was duly made
and the fact of such presentment entered upon the minutes of the
proceedings of the court.   (Code Crim. Proc., arts. 414, 415, 420.)
There is no express requirement of the statute that the organization
of the grand jury shall be entered upon the minutes of the court,
though such is the usual and proper practice, and is required by the

general provision of the statute making it the duty of the clerk to keep a fair record of all the acts done, and proceedings had in the court. (Rev. Stats., art. 1107.)

It further appears from the record in this case that upon motion of the district attorney, and before the trial of the cause was entered upon, the court caused to be entered upon the minutes, *nunc pro tunc*, the proper entry showing the organization of the grand jury which presented the indictment, and showing said grand jury to be a legal and duly qualified grand jury of La Salle county. This action of the court was authorized by law, and had the effect to fully supply the omission of the entry which should have been made at the time the grand jury was organized. (*Hill* v. *The State*, 4 Texas Ct. App., 559; *Townsend* v. *The State*, 5 Texas Ct. App., 574; *Case* v. *The State*, 7 Texas Ct. App., 495; *Tyson* v. *The State*, 14 Texas Ct. App., 388.) There was ample record evidence before the court to justify the *nunc pro tunc* entry.

It was not error to permit the file mark on the indictment to be amended in the manner stated in defendant's bill of exception. The failure of the clerk to affix his official designation to his signature was a mere clerical omission which could be supplied at any time under the direction of the court. It was clearly proved that the indictment had been filed at the proper time, by the proper officer, in the proper court. (Code Crim. Proc., art. 204.) Even without the amendment that was made, we are of the opinion that the filing was sufficient.

It is alleged in the indictment that the name of the deceased was "Chino," whose other name was to the grand jurors unknown. This, we think, was a sufficient allegation of the name of the deceased. (Willson's Cr. Forms, 5, p. 18, and cases there cited.)

There was no error in overruling the defendant's motion to set aside and quash the indictment.

As to the evidence, it is positive and conclusive that the defendant committed the homicide in a cool, sedate, deliberate frame of mind, and with a formed design to kill the deceased. So far as the testimony discloses, there was no provocation to induce the act. Express malice was sufficiently proved by the deliberate and cruel manner in which the killing was done; by the careless and indifferent manner of the defendant after the tragedy, and by the dying declaration of the deceased that the defendant killed him about four bits.

The charge of the court was full, fair and correct upon all the

issues that were even in a remote degree presented by the evidence. It was as favorable to the defendant as it could reasonably have been.

It was satisfactorily proved that the deceased was generally known by the name of "Chino," although in fact that was not his true name, and that the grand jury had used reasonable diligence before returning the indictment to ascertain the true name of the deceased, but could only ascertain that his name was "Chino." In respect to the name of the deceased we are of the opinion that the indictment is fully sustained by the evidence.

With regard to the motion for new trial, we think it was properly overruled. As to the newly discovered evidence, no sufficient diligence to discover and obtain it before the trial is shown. On the contrary it appears from the motion, and from the affidavits in connection therewith, that by the use of reasonable diligence all of the alleged newly discovered evidence could have been discovered in time to produce it at the trial. Some of the witnesses by whom defendant states he expects to prove material facts were present when the homicide occurred, and the fact of their presence was known to the defendant. In view of the evidence adduced on the trial, and of the want of diligence on the part of defendant to discover and obtain the alleged additional testimony, we think the court did not err in refusing the new trial.

We find no error in the conviction, and it is in all things affirmed.

*Affirmed.*

[Opinion delivered January 16, 1886.]